

WDM/KLR: USAO 2013R00371

FILED _____ _____ ENTERED
LOGGED _____ _____ RECEIVED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SEP 16 2013

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. RWT 13 CR 0496 |
| | * | |
| JORGE ENRIQUE MORENO-AGUILAR, | * | (Conspiracy to Commit Murder in Aid |
| a/k/a "Flaco," | * | of Racketeering; 18 U.S.C. § 1959(a)(5); |
| a/k/a "Castigato," | * | Murder in Aid of Racketeering, |
| JUAN ALBERTO ORTIZ-ORELLANA, | * | 18 U.S.C. § 1959(a)(1); Use, Carry, |
| a/k/a "Chele," | * | Brandish and Discharge a Firearm |
| a/k/a "Furia," and | * | During and in Relation to a Crime of |
| MELVIN MARQUEZ-SANCHEZ, | * | Violence, 18 U.S.C. § 924(c); Murder |
| a/k/a "Demente," | * | Resulting from the Use, Carrying, |
| | * | Brandishing and Discharging of a |
| Defendants | * | Firearm During and in Relation to a |
| | * | Crime of Violence, 18 U.S.C. § 924(j); |
| | * | Aiding and Abetting, 18 U.S.C. § 2) |
| | * | |

*******

## INDICTMENT

### COUNT ONE
### (Conspiracy to Commit Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland charges that:

### The Enterprise

1.     La Mara Salvatrucha, also known as the MS-13 gang ("MS-13"), is a gang

composed primarily of immigrants or descendants of immigrants from El Salvador, with members

operating throughout Prince George's County and Montgomery County, Maryland, and elsewhere.

2.     The name "Mara Salvatrucha" is a combination of several slang terms.   The word

"Mara" is the term used in El Salvador for "gang." The phrase "Salvatrucha" is a combination of the

words "Salva," which is an abbreviation for "Salvadoran," and "trucha," which is a slang term for

"fear us," "look out" or "heads up."

3.    In the United States, the MS-13 gang originated in Los Angeles, California, where MS-13 members engaged in turf wars for the control of drug distribution locations.   MS-13 quickly spread to states across the country, including Maryland.

4.    MS-13 is a national and international criminal organization with approximately 10,000 members regularly conducting gang activities in at least ten states and the District of Columbia, Mexico, Honduras and El Salvador.   MS-13 is one of the largest street gangs in the United States.   Gang members actively recruit members, including juveniles, from communities with a large number of immigrants from El Salvador.   In the United States, MS-13 has been functioning since at least the 1980s.

5.    At all times relevant to this Indictment, defendants **JORGE ENRIQUE MORENO-AGUILAR ("MORENO-AGUILAR"), JUAN ALBERTO ORTIZ-ORELLANA ("ORTIZ-ORELLANA")** and **MELVIN MARQUEZ-SANCHEZ ("MARQUEZ-SANCHEZ")** and others known and unknown to the Grand Jury, were members and associates of MS-13.

6.    At all times relevant to this Indictment, members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering.   The gang colors of MS-13 were blue, black and white, and members often wore clothing, particularly sports jerseys, with the number "13" or with numbers that, when added together, totaled 13, such as "76."   MS-13 members referred to one another by their gang names and often did not know fellow gang members except by their gang names.   Some MS-13 members have more discreetly and less publicly signified their membership by hiding and avoiding such clothing and tattoos in order to avoid detection by law enforcement.

2

7.     At all times relevant to the Indictment, members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons.   MS-13 members required that all individuals should show respect and deference to the gang and its membership.   To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.   MS-13's creed is exemplified by one of its mottos, "*Mata, roba, viola, controlla,*" which translates in sum and substance to, "Kill, steal, rape, control."

8.     At all times relevant to this Indictment, members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, kidnaping, and threatening and intimidating of witnesses.   MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang and against rival gangs. Participation in criminal activity by a member, particularly violent acts directed at rival gangs or as directed by the gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position.   One of the principal rules of MS-13 is that its members must attack and kill rivals whenever possible.   The 18th Street gang was the principal, although not the only, rival to MS-13 in Maryland and the surrounding area.

9.     At all times relevant to this Indictment, prospective members seeking to join MS-13 were required to complete an initiation process.   Prospective members start the initiation or probation process as a "Chequejo."   To achieve official status within the gang, the "Chequejo," must commit acts of violence in order to earn the respect of the gang.   To join MS-13, prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang.   During that initiation, other members of MS-13 would beat the new

3

member, usually until a gang member finished counting aloud to thirteen.

10.     At all times relevant to this Indictment, MS-13 was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region.   MS-13 cliques sometimes worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.   The cliques operated under the umbrella rules of MS-13.   In Maryland and the surrounding area, these cliques included Sailors Locotes Salvatrucha Westside ("SLSW"), Parkview Locotes Salvatrucha ("PVLS"), Normandy Locos Salvatruchas ("NLS"), Weedons Locotes Salvatrucha ("WLS"), Paejes Locates Salvatrucha ("PLS") and Langley Park Salvatrucha ("LPS").   Each clique was run by the "First Word," or the leader or president of the local organization.   The "Second Word" was the second-in-command or vice president of the clique. Soldiers were general members who took orders from the "First Word" or "Second Word."

11.     At all times relevant to this Indictment, MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members with the goal of inciting and encouraging further violence.   Leaders of cliques of MS-13 from across the United States, other countries and within regions of the United States would communicate to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

12.     At all times relevant to this Indictment, MS-13 received money and income from sources including the extortion or "taxing" of brothels and other businesses.   Such funds were used for gang purposes including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, inside and outside of Maryland, and in El Salvador.

4

13.     At all times relevant to this Indictment, MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, and other modes of communication.   Additionally, MS-13 members used transnational and international money wire transfers to conduct and promote gang activities.

### The Racketeering Enterprise

14.     At all times relevant to this Indictment, MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise").   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Enterprise

15.     The purposes of the enterprise included:

a.     Preserving and protecting the power, territory and profits of the Enterprise through the use of intimidation, violence, including assaults and murder, and threats of violence;

b.     Promoting and enhancing the Enterprise and its members' and associates' activities;

c.     Enriching the members and associates of the Enterprise through extortion;

d.     Keeping victims and potential witnesses in fear of the Enterprise and in fear of its members and associates through threats of violence and violence; and

e.     Providing assistance to members and associates, in order to hinder, obstruct and prevent law enforcement officers from identifying offenders, apprehending offenders, and trying and punishing offenders.

5

## Means and Methods of the Enterprise

16.     Among the means and methods by which the defendants and others conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.     Members and associates of the Enterprise used, attempted to use, and conspired to use extortion, which affected interstate commerce;

b.     Members and associates of the Enterprise and committed, attempted, and threatened to commit acts of violence, including murder, to protect and expand the Enterprise's criminal operations;

c.     Members and associates of the Enterprise promoted a climate of fear through violence and threats of violence; and

d.     Members and associates of the Enterprise used and threatened to use physical violence against various individuals.

17.     The above-described Enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1) and (5), namely, acts involving murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland and punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205 and 2-206, acts involving extortion in violation of Maryland Code, Criminal Law §§ 3-701 and 3-705, acts relating to tampering with a witness in violation of 18 U.S.C. § 1512; and, acts relating to retaliation against a witness in violation of 18 U.S.C. § 1513.

6

### The Conspiracy

18.      Between in or about January 2013 and on or about March 12, 2013, in the District

of Maryland and elsewhere, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
**a/k/a "Flaco,"**
**a/k/a "Castigato,"**
**JUAN ALBERTO ORTIZ-ORELLANA,**
**a/k/a "Chele,"**
**a/k/a "Furia," and**
**MELVIN MARQUEZ-SANCHEZ,**
**a/k/a "Demente,"**

for the purpose of gaining entrance to, maintaining and increasing position in MS-13, an

enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire,

confederate, and agree with each other and others known and unknown to the Grand Jury to

murder E.M., in violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201

and 2-204, and the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).

### Ways, Manners and Means of the Conspiracy

19.      Among the manner and means used by the defendants and their co-conspirators

to achieve the objects of the conspiracy were the following:

a.      It was part of the conspiracy that the defendants and co-conspirators

identified rival gang members that the defendants and co-conspirators intended to target for acts of

violence, including murder;

b.      It was further part of the conspiracy that the defendants and

co-conspirators obtained information about rival gang members including locations where they

lived or frequented.

7

     c.     It was further part of the conspiracy that the defendants and co-conspirators planned attacks on rival gang members.

     d.     It was further part of the conspiracy that the defendants and co-conspirators obtained weapons, including firearms, to use in order to carry-out attacks on rival gang members.

     e.     It was further part of the conspiracy that the defendants and co-conspirators took actions after the attacks upon such victims to avoid being identified by law enforcement and any witnesses.

### Overt Acts

20.     In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendants and their co-conspirators performed, participated in and did the following acts, among others, in the District of Maryland and elsewhere:

     a.     Between in or about January 2013 and in or about March 2013, defendants **MORENO-AGUILAR, ORTIZ-ORELLANA** and **MARQUEZ-SANCHEZ** and their co-conspirators targeted E.M. because E.M. was affiliated with the rival 18th Street gang.

     b.     Between in or about January 2013 and in or about and March 2013, defendants **MORENO-AGUILAR**, **ORTIZ-ORELLANA** and **MARQUEZ-SANCHEZ** and their co-conspirators obtained photographs of E.M.

     c.     In or about February 2013, defendants **MORENO-AGUILAR, ORTIZ-ORELLANA** and **MARQUEZ-SANCHEZ**, and their co-conspirators met with other MS-13 gang members to discuss and plan the killing of E.M.

     d.     On or about March 12, 2013, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** possessed a firearm to be used for the murder of E.M.

e.  On or about March 12, 2013, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** went to a location near Capitol Heights, Maryland, where they believed E.M. would be found, to murder E.M.

f.  On or about March 12, 2013, after conducting surveillance and observing the victim in the area of Capitol Heights, Maryland, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** murdered E.M. by shooting E.M. multiple times with a firearm.

g.  After on or about March 12, 2013, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** fled the area of Capitol Heights, Maryland, where they had committed the murder.

h.  After on or about March 12, 2013, **MORENO-AGUILAR** and **ORTIZ-ORELLANA** disposed of the firearm used to murder E.M.

18 U.S.C. § 1959(a)(5)

## COUNT TWO
### (Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 17 of Count One are incorporated here.

2.      On or about March 12, 2013, in the District of Maryland, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
a/k/a "Flaco,"
a/k/a "Castigato," and
**JUAN ALBERTO ORTIZ-ORELLANA,**
a/k/a "Chele,"
a/k/a "Furia,"

for the purpose of gaining entrance to, maintaining and increasing position in the MS-13 gang,

an enterprise engaged in racketeering activity, did murder E.M., willfully, deliberately,

maliciously and with premeditation, in violation and punishable pursuant to Maryland Code,

Criminal Law §§ 2-201 and 2-204, and the Common Law of Maryland, all in violation of 18

U.S.C. § 1959(a)(1).

18 U.S.C. § 1959(a)(1)
18 U.S.C. § 2

10

## COUNT THREE
### (Use , Carry, Brandish and Discharge of a Firearm During and in Relation to a Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

On or about March 12, 2013, in the District of Maryland, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
**a/k/a "Flaco,"**
**a/k/a "Castigato," and**
**JUAN ALBERTO ORTIZ-ORELLANA,**
**a/k/a "Chele,"**
**a/k/a "Furia,"**

did knowingly use, carry, brandish and discharge a firearm during and in relation to, and did possess, brandish and discharge a firearm in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States, to wit, conspiracy to commit murder in aid of racketeering and murder in aid of racketeering, as set forth in Counts One and Two of this Indictment and incorporated here.

18 U.S.C. § 924(c)
18 U.S.C. § 2

## COUNT FOUR
**(Murder Resulting From the Use, Carrying, Brandishing and
Discharging of a Firearm During and in Relation to a Crime of Violence)**

The Grand Jury for the District of Maryland further charges that:

On or about March 12, 2013, in the District of Maryland, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
**a/k/a "Flaco,"**
**a/k/a "Castigato," and**
**JUAN ALBERTO ORTIZ-ORELLANA,**
**a/k/a "Chele,"**
**a/k/a "Furia,"**

in the course of committing a violation of 18 U.S.C. § 924(c) as set forth in Count Three of this

Indictment, which is incorporated here, did cause the death of a person through the use, carrying,

brandishing and discharging of a firearm, which killing is a murder as defined in 18 U.S.C.

§ 1111, in that defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA**, with malice

aforethought, unlawfully killed a human being, to wit, E.M., willfully, deliberately, maliciously

and with premeditation.

18 U.S.C. § 924(j)
18 U.S.C. § 2

*Rod J. Rosenstein / WDM*
Rod J. Rosenstein
United States Attorney

A TRUE BILL:

# SIGNATURE REDACTED

Foreperson

_9-16-13_
Date

12