

WDM/KLR: USAO 2013R00371

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA      \*

     \*

     v.      \*      **CRIMINAL NO. RWT 13-0496**

     \*

**JORGE ENRIQUE MORENO-AGUILAR**      \*      (Conspiracy to Participate in a

     a/k/a "Flaco,"      \*      Racketeering Enterprise, 18 U.S.C.

     a/k/a "Castigato,"      \*      § 1962(d); Conspiracy to Commit

**JUAN ALBERTO ORTIZ-ORELLANA,**      \*      Witness Tampering, 18 U.S.C.

     a/k/a "Chele, "      \*      § 1512(k); Witness Tampering,

     a/k/a "Furia, "      \*      18 U.S.C. §§ 1512(a)(1)(A) and (C);

**MELVIN MARQUEZ-SANCHEZ,**      \*      Attempted Murder in Aid of

     a/k/a "Demente, "      \*      Racketeering, 18 U.S.C. § 1959(a)(5);

**CARLOS BELTRAN-FLORES,**      \*      Use, Carry, Brandish and Discharge a

     a/k/a "Joker, "      \*      Firearm During and in Relation to a

**FRANCISCO HERNANDEZ,**      \*      Crime of Violence18 U.S.C. § 924(c);

     a/k/a "Chicle,"      \*      Conspiracy to Commit Murder in Aid

**WILMER ARGUETA,**      \*      of Racketeering, 18 U.S.C.

     a/k/a "Chengo,"      \*      § 1959(a)(5); Murder in Aid of

     a/k/a "Happy,"      \*      Racketeering, 18 U.S.C. § 1959(a)(1);

**ERIC ANTONIO MEJIA-RAMOS,**      \*      Murder Resulting from the Use,

     a/k/a "Flaco,"      \*      Carrying, Brandishing and

**MINOR PEREZ-CHACH,**      \*      Discharging of a Firearm During and

     a/k/a "Minor Chach-Perez,"      \*      in Relation to a Crime of Violence,

     a/k/a "Little Bad, "      \*      18 U.S.C. § 924(j); Felon in Possession

     a/k/a "Bryant Sacarias," and      \*      of a Firearm and Ammunition, 18

**MIGUEL ANGEL MANJIVAR,**      \*      U.S.C § 922(g)(1); Alien in Possession

     a/k/a "Garra,"      \*      of a Firearm and Ammunition,

     a/k/a "Masflow,"      \*      18 U.S.C. § 922(g)(5); Forfeiture,

     \*      18 U.S.C. § 924(d), 28 U.S.C. § 2461(c))

     **Defendants**      \*

     \*

     **\*\*\*\*\*\*\***

## SUPERSEDING INDICTMENT

### COUNT ONE
**(Conspiracy to Participate in Racketeering Enterprise)**

The Grand Jury for the District of Maryland charges that:



## Introduction

1.      *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), is a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including Montgomery County and Prince George's County, and throughout the United States.

2.      The name "Mara Salvatrucha" is a combination of several slang terms.   The word "Mara" is the term used in El Salvador for "gang." The phrase "Salvatrucha" is a combination of the words "Salva," which is an abbreviation for "Salvadoran," and "trucha," which is a slang term for "fear us," "look out," or "heads up."

3.      In the United States, MS-13 has been functioning since at least the 1980s.   MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups.   MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations.   MS-13 quickly spread to states across the country, including Maryland.

4.      MS-13 is a national and international criminal organization and is one of the largest street gangs in the United States.   Gang members actively recruit members, including juveniles, from communities with a large number of Salvadorian immigrants.

5.      At all times relevant to this Superseding Indictment, the following defendants were members and associates of MS-13:

      a.      **JORGE ENRIQUE MORENO-AGUILAR, a/k/a "Flaco," a/k/a "Castigato" ("MORENO-AGUILAR");**

      b.      **JUAN ALBERTO ORTIZ-ORELLANA, a/k/a "Chele," a/k/a "Furia"("ORTIZ-ORELLANA");**

      c.      **MELVIN MARQUEZ-SANCHEZ, a/k/a "Demente,"**

("MARQUEZ-SANCHEZ");

   d.    **CARLOS BELTRAN-FLORES, a/k/a "Joker,"** ("BELTRAN-FLORES");

   e.    **FRANCISCO HERNANDEZ, a/k/a "Chicle," ("HERNANDEZ");**

   f.    **WILMER ARGUETA, a/k/a "Chengo," a/k/a "Happy,"** ("ARGUETA");

   g.    **ERIC ANTONIO MEJIA-RAMOS, a/k/a "Flaco",** ("MEJIA-RAMOS");

   h.    **MINOR PEREZ-CHACH, a/k/a "Minor Chach-Perez," a/k/a "Little Bad," a/k/a "Bryant Sacarias," ("PEREZ-CHACH"); and**

   i.    **MIGUEL ANGEL MANJIVAR, a/k/a "Garra," a/k/a "Masflo,"** ("MANJIVAR").

6.    At all times relevant to this Superseding Indictment, members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometime avoid conspicuous MS-13 tattoos with discreet ones such as "503," spider webs, three dots in a triangle formation signifying "vida loca," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

7.    The gang colors of MS-13 were blue, black and white, and members often wore clothing, particularly sports jerseys, with the number "13" or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as Nike "cortez." As with tattoos, some

MS-13 members have selected more discreet ways of dressing in order to signify their membership and at the same time avoid detection by law enforcement.     MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

8.     At all times relevant to this Superseding Indictment, members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons.  MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.   MS-13's creed was based on one of its mottos, "*Mata, roba, viola, controlla,*" which translates in sum and substance to, "Kill, steal, rape, control."

9.     At all times relevant to this Superseding Indictment, members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, kidnaping, robbery, prostitution, extortion, and threatening and intimidating of witnesses, as well as attempts and conspiracies to commit such offenses.   MS-13 members were required to commit acts of violence both to maintain membership and discipline within the gang and against rival gangs.   Participation in criminal activity by a member, particularly violent acts directed at rival gangs or as directed by the gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position.   One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible.   Rivals are often referred to as "chavalas."  MS-13, in the area of Prince George's County and Montgomery County, maintain rivalries with the 18th Street Gang, Latin Kings, Adelphi Crew, and the Lewisdale Crew, among others.

10.     At all times relevant to this Superseding Indictment, prospective members seeking to join MS-13 were required to complete an initiation process.   Individuals who associate and commit crimes with the gang, but are not prospective members, are called "Paisas."   Individuals who are attempting to join the gang are called "Chequejos," or "Cheqs."   Chequejos undergo a probationary period where they must commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang.   To join MS-13 and become a full member or "homeboy," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang.   During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

11.     At all times relevant to this Superseding Indictment, MS-13 was an international criminal organization, and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region.   Cliques operated under the umbrella rules of MS-13. MS-13 cliques often work together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.   In Maryland and the surrounding area, these cliques included Sailors Locotes Salvatrucha Westside ("SLSW"), Parkview Locotes Salvatrucha ("PVLS"), Guanacos Little Psychos Salvatrucha ("GLS"), Normandie Locotes Salvatruchas ("NLS"), Weedons Locotes Salvatrucha ("WLS"), Peajes Locates Salvatrucha ("PLS") and Langley Park Salvatruchas ("LPS").

a.     At all times relevant to this Superseding Indictment, defendants **MORENO-AGUILAR**, **ORTIZ-ORELLANA**, and **MARQUEZ-SANCHEZ** were members and associates of the Sailors Locotes Salvatrucha Westside Clique of MS-13.

b.     At all times relevant to this Superseding Indictment, defendants

**BELTRAN-FLORES**, **ARGUETA**, **MANJIVAR**, and **HERNANDEZ** were members and associates of the Peajes Locotes Salvatrucha Clique of MS-13.

c.      At all times relevant to this Superseding Indictment, defendant **MEJIA-RAMOS** was a member and associate of the Parkview Locotes Salvatrucha Clique of MS-13.

d.      At all times relevant to this Superseding Indictment, defendant **PEREZ-CHACH** was a member and associate of the Langley Park Salvatruchas Clique of MS-13.

12.     Each clique was presided over by the "First Word," or leader, or president of the clique.  The leader was also referred to as "Primera Palabra," or "Shotcaller."  The "Second Word," or "Segundo Palabra" was the second in command of the clique.   General members were required to take orders from the "First Word" or "Second Word."

13.     At all times relevant to this Superseding Indictment, MS-13 cliques kept in contact and reported to the supreme Shotcallers for their respective cliques, who were oftentimes based in El Salvador.  Cliques contacted their leaders based in El Salvador through cellular telephones during clique meetings to keep them updated on gang business, for advice and to resolve disagreements regarding operations among local cliques.   Incarcerated clique leaders based in El Salvador would regularly communicate and direct orders to Maryland-based cliques through phones smuggled into Salvadoran prisons.

14.     At all times relevant to this Superseding Indictment, MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members with the goal of inciting and encouraging further violence.  Each clique would hold clique meetings where business specific to that clique was discussed.   Any perceived

indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued.  These took the form of beatings by fellow MS-13 members.  More serious violations would result in the issuance of a "greenlight."  A greenlight is the order and/or approval to kill.

15.     MS-13 leaders from various cliques would also hold regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques. Clique leaders from across the United States, other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

16.     At all times relevant to this Superseding Indictment, MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses.  MS-13 would also receive income from extorting students at local high schools or prospective members who wanted to leave the gang.  Such funds were used for gang purposes including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, inside and outside of Maryland, and in El Salvador.

17.     At all times relevant to this Superseding Indictment, MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, and other modes of communication and social media such as Facebook and e-mail accounts.  Additionally, MS-13 members used transnational and international money wire transfers to conduct and promote gang activities.

## The Racketeering Enterprise

18.     At all times relevant to this Superseding Indictment, MS-13, including its

leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise").   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

19.    The above-described Enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Section 1961(1) and (5), namely, acts involving murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205 and 2-206; acts involving robbery in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403, and the Common Law of Maryland; acts involving extortion in violation of Maryland Code, Criminal Law §§ 3-701, 3-705, 3-706 and the Common Law of Maryland; acts relating to tampering with a witness in violation of 18 U.S.C. § 1512; and, acts relating to retaliation against a witness in violation of 18 U.S.C. § 1513.

### Purposes of the Enterprise

20.    The purposes of the enterprise included:

a.    Preserving and protecting the power, territory, and profits of the Enterprise through the use of intimidation and violence, including assaults, murders, and threats of violence;

b.    Promoting and enhancing the Enterprise and its members' and associates' activities;

c.    Enriching the members and associates of the Enterprise through robbery and extortion;

d.    Keeping victims and potential witnesses in fear of the Enterprise and in

fear of its members and associates through threats of violence and actual violence; and,

       e.      Providing assistance to members and associates, in order to hinder, obstruct and prevent law enforcement officers from identifying offenders, apprehending offenders, and trying and punishing offenders.

## Means and Methods of the Enterprise

21.     Among the means and methods by which the Defendants and others conducted and participated in the affairs of the Enterprise were the following:

       a.      Members and associates of the Enterprise used, attempted to use, and conspired to use extortion, which affected interstate commerce;

       b.      Members and associates of the Enterprise and committed, attempted, and threatened to commit acts of violence, including murder, to protect and expand the Enterprise's criminal operations;

       c.      Members and associates of the Enterprise promoted a climate of fear through violence and threats of violence; and

       d.      Members and associates of the Enterprise used and threatened to use physical violence against various individuals.

## The Racketeering Conspiracy

22.     Beginning on a date unknown to the Grand Jury, but at least prior to 2009, and continuing through in or about February 2014, in the District of Maryland and elsewhere, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
a/k/a "Flaco,"
a/k/a "Castigato,"
**JUAN ALBERTO ORTIZ-ORELLANA,**
a/k/a "Chele,"

9

a/k/a "Furia,"
**MELVIN MARQUEZ-SANCHEZ,**
a/k/a "Demente,"
**CARLOS BELTRAN-FLORES,**
a/k/a "Joker,"
**FRANCISCO HERNANDEZ,**
a/k/a "Chicle,"
**WILMER ARGUETA,**
a/k/a "Chengo,"
a/k/a "Happy,"
**ERIC ANTONIO MEJIA-RAMOS,**
a/k/a "Flaco,"
**MINOR PEREZ-CHACH,**
a/k/a "Minor Chach-Perez,"
a/k/a "Little Bad,"
a/k/a "Bryant Sacarias," and
**MIGUEL ANGEL MANJIVAR,**
a/k/a "Garra,"
a/k/a "Masflow,"

each being a person employed by and associated with MS-13, an enterprise engaged in, and the

activities of which affected, interstate and foreign commerce, together with others known and

unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate,

directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of

racketeering activity, as defined in Sections 1961(1) and (5) of Title 18, United States Code, which

pattern of racketeering activity consisted of multiple acts involving murder in violation of

Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of

Maryland punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204,

2-205 and 2-206, acts involving robbery in violation of Maryland Code, Criminal Law §§ 3-402

and 3-403, and the Common Law of Maryland, acts involving extortion in violation of Maryland

Code, Criminal Law §§ 3-701 and 3-705, and the Common Law of Maryland, and acts indictable

under 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant) and 18

U.S.C. § 1513 (relating to retaliation against a witness, victim, or an informant).

## Manner and Means of the Racketeering Conspiracy

23.     Among the manners and means used by the defendants and their co-conspirators to achieve the objects of the conspiracy were the following:

a.     It was part of the manner and means of the conspiracy that the defendants, as members of MS-13, were required to have and did have regular meetings with other MS-13 gang members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 members who were arrested or incarcerated; the disciplining of MS-13 members; police interactions with MS-13 members; the identities of individuals suspected of cooperating with law enforcement and the proposed actions to be taken against them; plans and agreements regarding the commission of future crimes, including murder, extortion, robbery, illegal possession of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of gang rules.

b.     It was further part of the conspiracy that the defendants and other members and associates of MS-13 agreed to purchase, maintain, and circulate weapons and firearms for use in criminal activity by MS-13 members.

c.     It was further part of the conspiracy that MS-13 received money and income from sources including member dues, the extortion or "taxing" of high school students, other individuals who were in bad standing with MS-13, brothels, and other businesses, and the operation of their own brothels.  Such funds were used for gang purposes including obtaining weapons and providing support for MS-13 gang members including those imprisoned in the United States, inside and outside of Maryland, and in El Salvador.

d.     It was further part of the conspiracy that the defendants and other members and associates of MS-13 agreed that acts of violence, including murder, attempted murder,

11

kidnapping, and assault, would be committed by members and associates of MS-13 against rival gang members and others when it suited the enterprise's purposes.  MS-13 members also used violence to impose discipline within the gang.

        e.      It was further part of the conspiracy that MS-13 would obstruct justice and harm, threaten and intimidate witnesses and victims who cooperated with law enforcement.

        f.      It was further part of the conspiracy that the defendants, and other members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such targets including locations frequented by them; and would use such information in their plans to attack such targets.

        g.      It was further part of the conspiracy that the defendants and other members and associates of the gang would and did agree that acts of murder, including conspiracy and attempts to commit murder; and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary. Overt acts committed by members and associates of MS-13 include the following overt acts but are in no way limited to the following acts:

### Overt Acts

24.      In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendants and their co-conspirators  performed, participated in and did the following acts, among others, in the District of Maryland and elsewhere:

        a.      From in or around 2009 and continuing through in and around December 2013, MS-13 members from the Parkview and Sailors cliques extorted illegal businesses, including brothels, throughout Prince George's County and Montgomery County.

b.      From in or around 2010 and continuing through in or around December 2013, MS-13 members from the Parkview, Sailors, and Peajes cliques sent money to MS-13 members based in El Salvador and to incarcerated MS-13 members in the United States.

c.      On or about May 17, 2009, defendants **HERNANDEZ** and **ARGUETA** were in possession of a firearm and machete in an automobile in the area of 3500 East West Highway in Hyattsville, Maryland.

d.      On or about December 17, 2009, defendant **ARGUETA** was in possession of a can of OC spray in an automobile in the area of 1440 University Boulevard in Hyattsville, Maryland.

e.      Beginning in mid-2010 and continuing through the end of 2010, MS-13 leaders based in El Salvador contacted MS-13 leaders in Maryland on several occasions to discuss MS-13 organization, rules, and discipline among cliques and MS-13 members in the Maryland suburbs of Washington, D.C.

f.      On or about May 1~~7~~, 2010, defendant **MANJIVAR** and other MS-13 members and associates shot and stabbed Victim-1, who was associated with the Lewisdale Crew, and stabbed victim Victim-2 in the area of 2304 Amherst Road, in Hyattsville, Maryland.

g.      On or about July 1, 2010, an MS-13 leader from the Guanacos Little Psychos Clique in El Salvador held a conference call with MS-13 leaders in Maryland in response to the recent murder to two MS-13 members in Maryland.  The MS-13 leader from El Salvador ordered the Maryland clique leaders to spread the word that each clique must kill at least one "chavala," or report one "chavala skull" in the next month as revenge for two MS-13 members being killed.

h.      On or about July 1, 2010, an MS-13 leader from the Guanacos Little

13

Psychos Clique in El Salvador held a conference call with MS-13 leaders in Maryland directing them to search for an MS-13 member who goes by the moniker "Tiny," who the El Salvador based leader believed was cooperating with the Federal Bureau of Investigation in Virginia and Maryland.   The MS-13 leader from the Guanacos Little Psychos Clique in El Salvador directed the leaders in Maryland to come up with a plan to locate this individual and "nab him as soon as possible."

     i.  On or about September 2, 2010, defendants **ARGUETA** and **MANJIVAR**, and other MS-13 members congregated on the trails behind Rosa Parks Elementary School located at 6111 Ager Road in Hyattsville, Maryland.

     j.  On or about September 3, 2010, defendants **BELTRAN-FLORES**, **MANJIVAR**, and **HERNANDEZ**, and other MS-13 members assaulted and robbed a person known to the Grand Jury and identified in this Superseding Indictment as Victim-3 in the area of 8700 New Hampshire Avenue in Hyattsville, Maryland.

     k.  On or about September 16, 2010, defendants **ARGUETA** and **MEJIA-RAMOS,** and other MS-13 members trespassed and loitered in the area of High Point High School, located at 3601 Powder Mill Road in Beltsville, Maryland, with a butcher knife, a folding knife, and a pair of brass knuckles.

     l.  On or about November 20, 2010, defendants **HERNANDEZ,** **BELTRAN-FLORES,** and **ARGUETA,** went to the area of Ager Road and East West Highway, in Chillum Maryland, and possessed auto theft tools.

     m.  On or about January 10, 2011, an MS-13 member called defendant **MANJIVAR** and informed him that two "chavalas," one of whom was later identified as J.A., were walking up University Boulevard toward the former Shoppers Food Warehouse located at

2400 University Boulevard in Hyattsville, Maryland.

n.      On or about January 10, 2011, defendant **MANJIVAR** and several MS-13 members murdered J.A. in the parking lot of the former Shoppers Food Warehouse located at 2400 University Boulevard in Hyattsville, Maryland, by stabbing him repeatedly with knives and attacking him with a machete.

o.      On or about January 10, 2011, defendant **MANJIVAR** and several MS-13 members attempted to murder a person known to the Grand Jury and identified in this Superseding Indictment as Victim-4 in the parking lot of the former Shoppers Food Warehouse located at 2400 University Boulevard in Hyattsville, Maryland, by stabbing him repeatedly.

p.      On or about January 10, 2011, defendant **HERNANDEZ** aided multiple MS-13 members in escaping police apprehension after the murder of J.A. and attempted murder of Victim-4, by driving to the murder scene, picking up MS-13 members, and sneaking them out of the area while police searched for them.

q.      In or about January 2011, defendant **MANJIVAR** bragged about the murder occurring in front of the Shoppers Food Warehouse to defendant **HERNANDEZ,** stating that the victims were from the 18th Street Gang.

r.      On or about February 16, 2011, defendant **BELTRAN-FLORES** possessed a concealed razor blade while in the company of another MS-13 member in the parking lot of High Point High School located at 3601 Powder Mill Road in Beltsville, Maryland.

s.      From in or around March 2011 and continuing through October 2011, defendants **HERNANDEZ, BELTRAN-FLORES**, and **ARGUETA**, and other MS-13 members met and planned to extort a person known to the Grand Jury and identified in this Superseding Indictment as Victim-3 under the threat of a "greenlight."

15

t.     In or around March 2011, defendants **BELTRAN-FLORES, HERNANDEZ,** and **ARGUETA,** and other MS-13 members threatened Victim-3 that he would be assaulted unless he met weekly or bi-weekly extortion demands, commonly referred to as "rent" or "tax."

u.     On or about May 29, 2011, defendant **HERNANDEZ** and other MS-13 members assaulted and attempted to stab a person known to the Grand Jury and identified in this Superseding Indictment as Victim-5 with a butterfly knife and a pair of brass knuckles in the area of 5900 33rd Avenue in Hyattsville, Maryland.

v.     On or about June 10, 2011, defendants **HERNANDEZ, BELTRAN-FLORES**, and **ARGUETA**, and another MS-13 member and associate, took turns posing for photographs next to MS-13 graffiti while displaying MS-13 gang signs.

w.     On or about June 10, 2011, defendant **BELTRAN-FLORES** recorded a short video of defendants **HERNANDEZ** and **ARGUETA**, and another MS-13 member, posing while displaying MS-13 gang hand signs.

x.     On or about June 25, 2011, defendants **BELTRAN FLORES, HERNANDEZ, ARGUETA,** and **MANJIVAR,** and other MS-13 members were associating and traveling together in a car driven by defendant **HERNANDEZ,** in the area of Langley Park, specifically in the area of 1501 University Boulevard, in Hyattsville, Maryland.

y.     On or around July 21, 2011, defendant **ARGUETA** directed another MS-13 member to pick up an extortion payment from Victim-3.

z.     On or about July 29, 2011, defendant **ARGUETA** contacted Victim-3 to demand extortion payments.

aa.    On or about July 29, 2011, defendant **ARGUETA** picked up an extortion

payment from Victim-3.

bb.     On or about September 1, 2011, defendant **BELTRAN-FLORES** loitered in the area of 8104 Tahona Drive, in Silver Spring, Maryland, with defendant **ARGUETA**, who possessed a can of OC spray.

cc.     On or about September 1, 2011, defendant **ARGUETA** picked up an extortion payment from Victim-3.

dd.     On or about September 8, 2011, defendant **ARGUETA** called Victim-3 and threatened to go to Victim-3's mother's house if defendant **ARGUETA** did not receive an extortion payment.

ee.     On or about September 9, 2011, defendant **BELTRAN-FLORES** picked up an extortion payment from Victim-3.

ff.     On or about September 13, 2011, in Hyattsville, Maryland, MS-13 members and associates assaulted and robbed a person known to the Grand Jury and identified in this Superseding Indictment as Victim-6, who was associated with the Adelphi Crew, in the area of 8032 New Hampshire Avenue, in Hyattsville, Maryland.

gg.     On or about September 15, 2011, defendant **ARGUETA** directed another individual to meet Victim-3 and pick up an extortion payment.

hh.     On or about October 6, 2011, defendant **BELTRAN-FLORES** spoke with Victim-3 and told Victim-3 that defendant **HERNANDEZ** would be picking up the weekly extortion payment.

ii.     On or about October 6, 2011, Victim-3 was contacted by another MS-13 member and directed to drop the extortion payment at the MS-13 member's home.

jj.     On or about October 14, 2011, defendant **BELTRAN-FLORES** directed

Victim-3 to drop off an extortion payment with another MS-13 member.

kk.   On or about November 2, 2011, defendant **BELTRAN-FLORES** contacted Victim-3 to inform Victim-3 that Victim-3 owed three weeks of extortion payments.

ll.   On or about November 7, 2011, defendant **BELTRAN-FLORES** directed Victim-3 to drop off several late extortion payments to another MS-13 member.

mm.   Between in or about September 17, 2011 and November 15, 2011, defendants **BELTRAN-FLORES** and **HERNANDEZ**, and other MS-13 members and associates met, discussed and planned the murder of Victim-6 to prevent him from testifying at trial against defendant **ARGUETA**, a fellow MS-13 member, in the Circuit Court for Prince George's County, Maryland.

nn.   On or about October 22, 2011, defendant **ARGUETA** posed for photos inside the Prince Georges County Detention Center while flashing MS-13 gang hand signs.

oo.   Between in or about September 17, 2011 and November 15, 2011, defendants **ARGUETA** and **HERNANDEZ** discussed through phone calls and written letters that Victim-6 was a "rat" for cooperating with law enforcement against defendant **ARGUETA,** in connection with charges relating to the September 13, 2011 assault of Victim-6.

pp.   Between in or about September 17, 2011 and November 15, 2011, defendant **HERNANDEZ** passed messages between MS-13 member defendant **ARGUETA,** who was incarcerated at the Prince George's County Detention Center, and members of his MS-13 clique, including defendant **BELTRAN-FLORES,** regarding Victim-6 "ratting" on defendant **ARGUETA** by cooperating with law enforcement.

qq.   On or about November 15, 2011, defendant **BELTRAN-FLORES** and other MS-13 members discussed murdering Victim-6 for reasons including Victim-6's

18

cooperating with law enforcement against defendant **ARGUETA** and to prevent Victim-6 from testifying at defendant **ARGUETA**'s trial.

rr.     On or about November 15, 2011, defendant **BELTRAN-FLORES** and other MS-13 members and associates shot Victim-6 several times outside of Victim-6's residence in Hyattsville, Maryland, with the intention of killing Victim-6.

ss.     On or about November 15, 2011, defendant **BELTRAN-FLORES** and other MS-13 members attempted to avoid apprehension by fleeing from law enforcement and concealing evidence, including the firearm used to shoot Victim-6.

tt.     On or about December 11, 2011, at the Prince George's County Detention Center, defendants **ARGUETA**, **MANJIVAR**, and other MS-13 members, assaulted a person known to the Grand Jury and identified in this Superseding Indictment as Victim-7, an 18th Street Gang member, using among other things, a lunch tray and a trash can.

uu.     On or about March 6, 2012, defendant **BELTRAN-FLORES** had a 6-inch "shank" in his cell at the Prince George's County Detention Center.

vv.     Between in or about July, 2012 and August 29, 2012, defendant **MEJIA-RAMOS** and other MS-13 members, at least one who was in the custody of the Maryland Department of Corrections, communicated with each other through cellular telephones to discuss and plan the killing of I. M., because I.M. was associated with a rival gang.

ww.     Between in or about July, 2012 and August 29, 2012, defendant **MEJIA-RAMOS** and other gang members, at least one who was in the custody of the Maryland Department of Corrections, communicated with I.M. in ways including the use of cellular telephones for the purpose of befriending I.M. and obtaining information from I.M., all in furtherance of the plan to kill I.M.

xx.     On or about August 28, 2012, defendant **MEJIA-RAMOS** tricked the victim I.M. into accompanying him and others under the ruse that they were going out to socialize, when actually defendant **MEJIA-RAMOS** intended for I.M. to be killed.

yy.     Between in or about August 28, 2012 and August 29, 2012, defendant **MEJIA-RAMOS** and others murdered I.M. in the Beltsville Community Park in Beltsville, Maryland by shooting her in the head.

zz.     In or about October, 2012, defendant **MEJIA-RAMOS** and other MS-13 members and associates discussed, planned and agreed to murder a person known to the Grand Jury and identified in this Superseding Indictment as Victim-8, who was associated with the Latin Kings.

aaa.     On or about October 8, 2012, in Hyattsville, Maryland, defendant **MEJIA-RAMOS** and other MS-13 members and associates attacked and stabbed Victim-8.

bbb.     On or about October 10, 2012, in Hyattsville, Maryland, defendant **MEJIA-RAMOS** and other MS-13 members and associates attacked and stabbed Victim-8, with the intention of killing Victim-8.

ccc.     On or about December 4, 2012, in Langley Park, Maryland, members of the Sailors Clique of MS-13 attempted to murder Victim-9, who was associated with the Lewisdale Crew.

ddd.     On or about January 17, 2013, defendants **MARQUEZ-SANCHEZ**, **PEREZ-CHACH**, and other gang members congregated in a wooded area near Piney Branch Road and New Hampshire Avenue in Adelphi, Maryland.

eee.     Between in or about January 2013, and March 2013, defendants **MORENO-AGUILAR**, **ORTIZ-ORELLANA**, and **MARQUEZ-SANCHEZ**, and other MS-13

20

members discussed murdering E.M., who was associated with the 18th Street Gang.

fff.     As part of their plan to murder E.M., between in or about January 2013 and in or about and March 2013, defendants **MORENO-AGUILAR**, **ORTIZ-ORELLANA**, and **MARQUEZ-SANCHEZ**, and other MS-13 members obtained and distributed photographs of E.M.

ggg.     Between in or about January 2013, and February 5, 2013, defendants **MORENO-AGUILAR**, **ORTIZ-ORELLANA,** and **MARQUEZ-SANCHEZ,** and other MS-13 members went to Capitol Heights, Maryland for the purpose of searching for and killing E.M.

hhh.     On or about February 2, 2013, in Takoma Park, Maryland, defendants **MORENO-AGUILAR**, **ORTIZ-ORELLANA**, and **MARQUEZ-SANCHEZ**, and other MS-13 members met to discuss gang affairs including the plan to murder E.M.

iii.     On or about February 23, 2013 in Hyattsville, Maryland, defendant **PEREZ-CHACH** observed N.G., and believed N.G. to be a former MS-13 member who had been "green-lighted" for cooperating with law enforcement against several MS-13 members in a prior federal racketeering prosecution in the District of Maryland.

jjj.     On or about February 23, 2013 in Hyattsville, Maryland, defendant **PEREZ-CHACH** communicated his suspicions about N.G. to another MS-13 member.

kkk.     As a result of that communication, on or about February 23, 2013, at least one other MS-13 member came to a location in Hyattsville, Maryland, where defendant **PEREZ-CHACH** was following N.G.

lll.     On or about February 23, 2013, defendant **PEREZ-CHACH** and another MS-13 member murdered N.G. by attacking N.G. with a knife and machete.

mmm. On or about February 28, 2013, in Hyattsville, Maryland, MS-13 members

21

and associates, while in possession of a firearm, observed M.Y. and believed M.Y. to be a rival gang member.

nnn.    On or about February 28, 2013, in Hyattsville, Maryland, MS-13 gang members and associates, armed with a firearm, got out of a vehicle and followed M.Y. and M.Y.'s companion.

ooo.    On or about February 28, 2013, in Hyattsville, Maryland, MS-13 gang members and associates murdered M.Y. by shooting M.Y. with a firearm.

ppp.    On or about March 11, 2013, in Hyattsville, Maryland, defendant **PEREZ-CHACH** possessed a knife.

qqq.    On or about March 12, 2013, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** possessed a firearm in the area of Capitol Heights, Maryland.

rrr.    On or about March 12, 2013, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** went to a location in the area of Capitol Heights, Maryland, searching for E.M.

sss.    On or about March 12, 2013, after conducting surveillance and observing E.M. in the area of Capitol Heights, Maryland, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** murdered E.M. by shooting E.M. multiple times with a firearm.

ttt.    On or about March 12, 2013, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** fled the area of Capitol Heights, Maryland, where they had committed the murder.

uuu.    At some point following the murder, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** disposed of the firearm used to murder E.M.

vvv.    On or about March 16, 2013, in Hyattsville, Maryland, MS-13 members

22

and associates assaulted and robbed a person known to the Grand Jury and identified in this Superseding Indictment as Victim-10.

www.  On or about March 16, 2013, in Hyattsville, Maryland, MS-13 members and associates assaulted a person known to the Grand Jury and identified in this Superseding Indictment as Victim-11.

xxx.  On or about April 8, 2013, in Takoma Park, Maryland, defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA** met with another MS-13 member and discussed gang affairs including the murder of E.M.

yyy.  On or about May 20, 2013, in Hyattsville, Maryland, defendant **PEREZ-CHACH** possessed two firearms, one of which he intended to transfer to another MS-13 member.

### Special Sentencing Factors Regarding Count One

25.  On or about January 10, 2011, in the District of Maryland, defendant **MANJIVAR** unlawfully conspired with others known and unknown to the Grand Jury to murder J.A. and Victim-4, in violation of Maryland Code, Criminal Law Article 2-201(a)(1) and the Common Law of Maryland, and punishable by Maryland Code, Criminal Law Article 1-202.

26.  On or about January 10, 2011, in the District of Maryland, defendant **MANJIVAR** feloniously, willfully and with deliberately premeditated malice, killed and murdered J.A., in violation of Maryland Code, Criminal Law Article 2-201(a)(1).

27.  On or about January 10, 2011, in the District of Maryland, defendant **MANJIVAR** feloniously, willfully and with deliberately premeditated malice attempted to murder Victim-4, in violation of Maryland Code, Criminal Law Article 2-205.

28.  On or about November 15, 2011, in the District of Maryland, defendant

**BELTRAN-FLORES** unlawfully conspired with others known and unknown to the Grand Jury to murder Victim-6, in violation of Maryland Code, Criminal Law Article 2-201(a)(1) and the Common Law of Maryland, and punishable by Maryland Code, Criminal Law Article 1-202.

29.     On or about November 15, 2011, in the District of Maryland, defendant **BELTRAN-FLORES** feloniously, willfully and with deliberately premeditated malice attempted to murder Victim-6, in violation of Maryland Code, Criminal Law Article 2-205.

30.     Between in or about July, 2012 and August 29, 2012, in the District of Maryland, defendant **ERIC ANTONIO MEJIA-RAMOS**, unlawfully conspired with others known and unknown to the Grand Jury to murder I.M., in violation of Maryland Code, Criminal Law Article 2-201(a)(1), and the common law of Maryland, and punishable by Maryland Code, Criminal Law Article 1-202.

31.     Between in and about August 28, 2012 and August 29, 2012, in the District of Maryland, defendant **MEJIA-RAMOS** feloniously, willfully and with deliberately premeditated malice, killed and murdered I.M., in violation of Maryland Code, Criminal Law Article 2-201(a)(1).

32.     Between October 8 and October 10, 2012, in the District of Maryland, defendant **MEJIA-RAMOS**, unlawfully conspired with others known and unknown to the Grand Jury to murder Victim-8, in violation of Maryland Code, Criminal Law Article 2-201(a)(1) and 2-201 (a)(4)(vi), and the common law of Maryland, and punishable by Maryland Code, Criminal Law Article 1-202.

33.     On or about October 10, 2012, in the District of Maryland, defendant **ERIC ANTONIO MEJIA-RAMOS**, feloniously, willfully and with deliberately premeditated malice attempted to murder witness Victim-8, in violation of Maryland Code, Criminal Law Article

2-205.

34.     Between in or about January 2012 and March 12, 2013, in the District of Maryland,

defendants **MORENO-AGUILAR,** O**RITZ-ORELLANA,** and **MARQUEZ-SANCHEZ**

unlawfully conspired with each other and others known and unknown to the Grand Jury to murder

E.M., in violation of Maryland Code, Criminal Law Article 2-201(a)(1), and the Common Law of

Maryland, and punishable by Maryland Code, Criminal Law Article 1-202.

35.     On or about March 12, 2013, in the District of Maryland, defendants

**MORENO-AGUILAR** and **ORITZ-ORELLANA** feloniously, willfully and with deliberately

premeditated malice, killed and murdered E.M., in violation of Maryland Code, Criminal Law

Article 2-201(a)(1).

36.     On or about February 23, 2013, in the District of Maryland, defendant **MINOR**

**PEREZ-CHACH** unlawfully conspired with others known and unknown to the Grand Jury to

murder N.G., in violation of Maryland Code, Criminal Law Article 2-201(a), and the Common

Law of Maryland, and punishable by Maryland Code, Criminal Law Article 1-202.

37.     On or about February 23, 2013, in the District of Maryland, defendant **MINOR**

**PEREZ-CHACH** feloniously, willfully and with deliberately premeditated malice, killed and

murdered N.G. in violation of Maryland Code, Criminal Law Article 2-201(a)(1).

18 U.S.C. § 1962(d)

## COUNT TWO
### (Conspiracy to Commit Witness Tampering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 4, 6 through 10, the first paragraph of Paragraph 11, Paragraphs 12 through 21, and Paragraph 23 of Count One of this Superseding Indictment are incorporated here.

2. In or about 2011, defendant **CARLOS BELTRAN-FLORES, a/k/a "Joker,"** was a member and associate of MS-13 and the Peajes clique of MS-13.

3. Since at least 2009, the United States Department of Homeland Security, Homeland Security Investigations ("HSI") was involved in the investigation of MS-13 and crimes committed by MS-13 members in the District of Maryland and elsewhere. The offenses being investigated included, among others, violent crimes in aid of racketeering, in violation of Title 18, United States Code, Section 1959, and racketeering, in violation of Title 18, United States Code, Section 1962.

4. One of the matters that HSI was investigating was an assault that members of MS-13 committed in the Hyattsville, Maryland area, on September 13, 2011 against Victim-6 who was affiliated with a rival gang of MS-13. Victim-6 survived the attack and was a witness in the investigation of the crime committed against Victim-6.

5.     Between in and about September 17, 2011 and November 15, 2011, in the District of Maryland and elsewhere, the defendant,

**CARLOS BELTRAN-FLORES,**
**a/k/a "Joker,"**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to kill and attempt to kill Victim-6, with the intent to prevent the attendance and testimony of Victim-6 in an official proceeding, and to prevent the communication by Victim-6 to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a Federal offense, specifically, violent crimes in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959, and conspiring to violate the racketeering statute, in violation of Title 18, United States Code, Section 1962(d).

18 U.S.C. § 1512(k)

## COUNT THREE
### (Witness Tampering by Attempted Murder)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 4 of Count Two of this Superseding Indictment are incorporated here.

2.      On or about November 15, 2011, in the District of Maryland and elsewhere, the

defendant,

### CARLOS BELTRAN-FLORES,
### a/k/a "Joker,"

did knowingly and willfully attempt to kill Victim-6 with the intent to prevent the attendance and

testimony of Victim-6 in an official proceeding, and to prevent the communication by Victim-6 to

a law enforcement officer and judge of the United States of information relating to the commission

and possible commission of a Federal offense, specifically, violent crimes in aid of racketeering, in

violation of Title 18, United States Code, Section 1959.

18 U.S.C. §§ 1512(a)(1)(A) and (C)
18 U.S.C. § 2

## COUNT FOUR
**(Conspiracy to Commit Murder in Aid of Racketeering)**

1.      Paragraphs 1 through 17, and 19 through 21 of Count One of this Superseding Indictment are incorporated here.

2.      MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.      MS-13, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205 and 2-206; acts involving robbery in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403, and the Common Law of Maryland; acts involving extortion in violation of Maryland Code, Criminal Law §§ 3-701, 3-705, 3-706 and the Common Law of Maryland; acts indictable under 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant), and 18 U.S.C. § 1513 (relating to retaliation against a witness, victim, or an informant).

4.      In or about 2011, defendant **CARLOS BELTRAN-FLORES, a/k/a "Joker,"** was a member and associate of MS-13 and the Peajes clique of MS-13.

5.      Between in or about November 15, 2011, in the District of Maryland and elsewhere, the defendant,

**CARLOS BELTRAN-FLORES,**
**a/k/a "Joker,"**

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an

enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire,

confederate, and agree with others known and unknown to the Grand Jury to murder Victim-6, in

violation of Maryland Code, Criminal Law §§ 2-201 and 2-204, and punishable pursuant to

Maryland Code, Criminal Law §§ 2-201, 2-204, and 1-202, all in violation of 18 U.S.C.

§ 1959(a)(5).


18 U.S.C. § 1959(a)(5)

## COUNT FIVE
### (Attempted Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 4 of Count Four of this Superseding Indictment are incorporated here.

2.      On or about November 15, 2011, in the District of Maryland and elsewhere, the defendant,

**CARLOS BELTRAN-FLORES,**
**a/k/a "Joker,"**

for the purpose of maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, feloniously, willfully, and with deliberately premeditated malice, attempted to murder Victim-7, by using a firearm to shoot Victim-6, which crime constituted attempted murder under Maryland Code, Criminal Law §§ 2-205 and 2-206, all in violation of 18 U.S.C. § 1959(a)(5).


18 U.S.C. § 1959(a)(5)
18 U.S.C. § 2

**COUNT SIX**
**(Use, Carry, Brandish and Discharge a Firearm During and**
**In Relation to a Crime of Violence)**

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 4 of Count Two of this Superseding Indictment are incorporated here.

2.     On or about November 15, 2011, in the District of Maryland and elsewhere, the defendant,

**CARLOS BELTRAN-FLORES,**
**a/k/a "Joker,"**

did knowingly, intentionally and unlawfully use, carry, brandish and discharge a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States -- specifically, conspiracy to participate in a racketeering enterprise, conspiracy to commit witness tampering by murder, witness tampering by attempted murder, conspiracy to commit murder in aid of racketeering, and attempted murder in aid of racketeering, in violation of Title 18, United States Code, Sections 1962(d), 1512(k), 1512(a)(1)(A) and (C), and 1959(a)(5) -- as set forth in Counts One, Two, Three, Four and Five of this Superseding Indictment and incorporated here.

18 U.S.C. § 924(c)(1)(A)(iii)
18 U.S.C. § 2

## COUNT SEVEN
### (Conspiracy to Commit Murder in Aid of Racketeering)

1.      Paragraphs 1 through 3 of Count Four of this Superseding Indictment are incorporated here.

2.      In or about 2013, defendants **JORGE ENRIQUE MORENO-AGUILAR, a/k/a "Flaco," a/k/a "Castigato," JUAN ALBERTO ORTIZ-ORELLANA, a/k/a "Chele," a/k/a "Furia,"** and **MELVIN MARQUEZ-SANCHEZ, a/k/a "Demente,"** were members and associates of MS-13 and the Sailors Locotes Salvatrucha Westside Clique of MS-13.

3.      Between in or about January 2013 and on or about March 12, 2013, in the District of Maryland and elsewhere, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
**a/k/a "Flaco,"**
**a/k/a "Castigato,"**
**JUAN ALBERTO ORTIZ-ORELLANA,**
**a/k/a "Chele,"**
**a/k/a "Furia," and**
**MELVIN MARQUEZ-SANCHEZ,**
**a/k/a "Demente,"**

for the purpose of gaining entrance to, maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to murder E.M., in violation of and punishable pursuant to Maryland Code, Criminal Law §§ 2-201 and 2-204, and the Common Law of Maryland, all in violation of 18 U.S.C. § 1959(a)(5).


18 U.S.C. § 1959(a)(5)

### COUNT EIGHT
### (Murder in Aid of Racketeering)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 3 of Count Four of this Superseding Indictment are incorporated here.

2.     In or about 2013, defendants **JORGE ENRIQUE MORENO-AGUILAR, a/k/a "Flaco," a/k/a "Castigato," and JUAN ALBERTO ORTIZ-ORELLANA, a/k/a "Chele," a/k/a "Furia,"** were members and associates of MS-13 and the Sailors Locotes Salvatrucha Westside Clique of MS-13.

3.     On or about March 12, 2013, in the District of Maryland, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
**a/k/a "Flaco,"**
**a/k/a "Castigato," and**
**JUAN ALBERTO ORTIZ-ORELLANA,**
**a/k/a "Chele,"**
**a/k/a "Furia,"**

for the purpose of gaining entrance to, maintaining and increasing position in an enterprise engaged in racketeering activity, did murder E.M., in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, and 2-206, and the Common Law of Maryland and punishable pursuant to Maryland Code, Criminal Law §§ 1-201 and 1-202.

18 U.S.C. § 1959(a)(1)
18 U.S.C. § 2

## COUNT NINE
### (Use, Carry, Brandish and Discharge Firearm During and In Relation to a Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraph 1 of Count Two of this Superseding Indictment is incorporated here.

2.     In or about 2013, defendants **JORGE ENRIQUE MORENO-AGUILAR, a/k/a "Flaco," a/k/a "Castigato,"** and **JUAN ALBERTO ORTIZ-ORELLANA, a/k/a "Chele," a/k/a "Furia,"** were members and associates of MS-13 and the Sailors Locotes Salvatrucha Westside Clique of MS-13.

3.     On or about March 12, 2013, in the District of Maryland, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
**a/k/a "Flaco,"**
**a/k/a "Castigato," and**
**JUAN ALBERTO ORTIZ-ORELLANA,**
**a/k/a "Chele,"**
**a/k/a "Furia,"**

did knowingly use, carry, brandish and discharge a firearm during and in relation to, and did possess, brandish and discharge a firearm in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States, to wit, conspiracy to participate in a racketeering enterprise, conspiracy to commit murder in aid of racketeering and murder in aid of racketeering, in violation of Title 18, United States Code, Sections 1962(d), 1959(a)(1) and 1959(a)(5) -- as set forth in Counts One, Seven and Eight of this Superseding Indictment, which are incorporated here.

18 U.S.C. § 924(c)
18 U.S.C. § 2

## COUNT TEN
### (Murder Resulting from the Use, Carrying, Brandishing and Discharging of a Firearm During and in Relation to a Crime of Violence)

The Grand Jury for the District of Maryland further charges that:

1.    Paragraph 1 of Count Two of this Superseding Indictment is incorporated here.

2.    In or about 2013, defendants **JORGE ENRIQUE MORENO-AGUILAR, a/k/a "Flaco," a/k/a "Castigato," and JUAN ALBERTO ORTIZ-ORELLANA, a/k/a "Chele," a/k/a "Furia,"** were members and associates of MS-13 and the Sailors Locotes Salvatrucha Westside Clique of MS-13.

3.    On or about March 12, 2013, in the District of Maryland, the defendants,

**JORGE ENRIQUE MORENO-AGUILAR,**
**a/k/a "Flaco,"**
**a/k/a "Castigato," and**
**JUAN ALBERTO ORTIZ-ORELLANA,**
**a/k/a "Chele,"**
**a/k/a "Furia,"**

in the course of committing a violation of 18 U.S.C. § 924(c), as set forth in Count Nine of this Superseding Indictment, which is incorporated here, did cause the death of a person through the use, carrying, brandishing and discharging of a firearm, which killing is a murder as defined in 18 U.S.C. § 1111, in that defendants **MORENO-AGUILAR** and **ORTIZ-ORELLANA**, with malice aforethought, unlawfully killed a human being, to wit, E.M., willfully, deliberately, maliciously and with premeditation.


18 U.S.C. § 924(j)
18 U.S.C. § 2

## COUNT ELEVEN
**(Felon in Possession of a Firearm and Ammunition)**

The Grand Jury for the District of Maryland further charges that:

On or about May 20, 2013, in the District of Maryland, the defendant,

**MINOR PEREZ-CHACH,**
**a/k/a "Minor Chach-Perez,"**
**a/k/a "Little Bad, "**
**a/k/a "Bryant Sacarias,"**

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did

knowingly possess a firearm and ammunition in and affecting commerce, to wit: (1) a Taurus .38

caliber revolver, model 80, bearing serial number 425138, loaded with six rounds of .38 caliber

ammunition; and (2) 33 rounds of .38 caliber ammunition.

18 U.S.C. § 922(g)(1)

## COUNT TWELVE
### (Alien in Possession of a Firearm and Ammunition)

The Grand Jury for the District of Maryland further charges that:

On or about May 20, 2013, in the District of Maryland, the defendant,

**MINOR PEREZ-CHACH,**
**a/k/a "Minor Chach-Perez,"**
**a/k/a "Little Bad,"**
**a/k/a "Bryant Sacarias,"**

being an alien who was illegally and unlawfully in the United States, did knowingly possess a firearm and ammunition in and affecting commerce, to wit: (1) a Taurus .38 caliber revolver, model 80, bearing serial number 425138, loaded with six rounds of .38 caliber ammunition; and (2) 33 rounds of .38 caliber ammunition.

18 U.S.C. § 922(g)(5)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.    Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction under Counts Eleven and Twelve of this Superseding Indictment.

2.    Pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), upon conviction of the offenses alleged in Counts Eleven and Twelve of this Superseding Indictment, the defendant,

**MINOR PEREZ-CHACH,**
**a/k/a "Minor Chach-Perez,"**
**a/k/a "Little Bad,"**
**a/k/a "Bryant Sacarias,"**

shall forfeit to the United States the firearm and ammunition identified in those counts of the Superseding Indictment and involved in those offenses.

18 U.S.C. § 924(d)
28 U.S.C. § 2461(c)

*Rod J. Rosenstein / WDM*
_____
Rod J. Rosenstein
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED
~~Foreperson~~

_____3-10-14_____
Date

39